**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: the Application of ) | CV 06-2203-PHX-JAT |
| ) | |
| GEORGE AUGUST ROUX, ) | |
| ) | **ORDER** |
|      Petitioner, ) | |
| ) | |
|   v. ) | |
| ) | |
| ) | |
| MELODY JUDITH ROUX, ) | |
| ) | |
|      Respondent. ) | |
| ) | |
| _____ ) | |

Pending before the Court is Petitioner's Petition to Return Children to Petitioner (Doc. # 1). On February 1, 2007, the Court presided over a hearing on this matter. At the hearing, Petitioner George August Roux ("Petitioner"), Petitioner's mother, Sigrid Wosnak, and Respondent Melody Judith Roux Stern testified. After consideration of the testimony and documentary evidence presented, and for the following reasons, the Court denies Petitioner's Petition to Return Children to Petitioner.

**I.    Background**

Sometime in 1999, after meeting on the Internet, Respondent, a United States citizen, traveled to Canada and began living with Petitioner, a Canadian citizen. Petitioner and Respondent resided in an apartment located in the basement of the house owned by Petitioner's mother. The house was located in Surrey, British Columbia, Canada. On

1   September 22, 2000, Petitioner and Respondent were married in Canada.  While both

2   Petitioner and Respondent were residing in Canada, two children were born of the marriage.

3   On January 15, 2002, Rosemary Renate Roux was born.  On September 10, 2003, Shaila Ann

4   Roux was born.

5       On June 22, 2004, Respondent, along with both children, traveled to Arizona to visit

6   family and possibly donate a kidney to her brother.  In July 2004, Respondent had decided

7   to stay in Arizona with the children.  In October 2004, Respondent, alone, returned to Surrey,

8   British Columbia, and informed Petitioner of her desire for a divorce and her intention to

9   remain in Arizona with the children.

10      In late November 2004, Petitioner requested that Respondent return the children to

11  Canada.  Respondent complied.  On December 6, 2004, Petitioner obtained an Interim Ex-

12  Parte Order from the Provincial Court of British Columbia granting joint custody and

13  guardianship of the children to Petitioner and Respondent and prohibiting the parties from

14  removing the children from the jurisdiction of the court.  Petitioner was further ordered to

15  serve Respondent with a copy of the order.  Petitioner testified that he served Respondent by

16  sending a copy of the order via registered mail to Respondent's mother's home in Kearny,

17  Arizona.

18      On January 17, 2005, Petitioner and Respondent agreed to an interim custody regime

19  and, appearing before the Provincial Court of British Columbia, obtained an Interim Consent

20  Order.  The order continued the joint custody and guardianship of the children and provided

21  that the parties shall share residency of the children as follows: (a) the children shall reside

22  primarily with Petitioner from December 4, 2004 to May 19, 2005, and the children will

23  reside in the Lower Mainland of British Columbia while in Petitioner's care; and (b) the

24  children shall reside primarily with Respondent from May 19, 2005 to August 19, 2005, and

25  the children will reside with her in Arizona.  The order further provided that the only adults

26  that may accompany the children during the travel to and from each parents' residence are

27  Petitioner, Respondent, and Petitioner's then-girlfriend, Erin Brealey, unless otherwise agreed

28  to by the parents.

1

On May 16, 2005, and pursuant to the prior order, Petitioner and Respondent returned

2

to the Provincial Court of British Columbia at which time another Interim Consent Order was

3

issued.  The order removed Erin Brealey as an approved travel companion for the children.

4

The order also provided that the children shall reside primarily with Petitioner from August

5

19, 2005 to December 19, 2005, during which time the children will reside in British

6

Columbia.  Thereafter, from December 19, 2005 to May 19, 2005, the order provided that

7

the children shall reside primarily with Respondent, during which time the children will

8

reside in Arizona.  Finally, the order provided that the children shall reside primarily with

9

Petitioner from May 19, 2006 to September 19, 2006, during which time the children will

10

reside in British Columbia.  Thereafter, according to the testimony presented at the hearing,

11

Petitioner and Respondent were to agree on additional shared custody until the children

12

reached school age.

13

In April 2006, Petitioner obtained new employment.  His work schedule required that

14

he work four days with three days off.  Petitioner contacted Respondent to inform her that

15

he would not be able to pick up the children on May 19, 2006, as provided in the most recent

16

court order, and that, instead, he wanted his mother to pick up the children.  Because the

17

Respondent and Petitioner's mother did not get along, Respondent refused to agree to such

18

a modification of their agreement and the court order.

19

On May 16, 2006, Petitioner obtained an Interim Order - Without Notice to Others

20

(Ex Parte) from the Provincial Court of British Columbia.  The order provided that

21

Petitioner's mother may act in place of Petitioner to pick up the children.  The order also

22

provided that Respondent "has liberty to apply to change or cancel this Order upon 7 clear

23

days notice to [Petitioner]."  This order was not served on Respondent.  Instead, Petitioner's

24

mother drove to Arizona, arriving on May 20, 2006, and presented the order to Respondent's

25

mother (Petitioner testified he did not have Respondent's home address).  Petitioner's mother

26

requested that the order be passed along to Respondent.  Thereafter, Petitioner's mother

27

checked into a hotel room and, a day or so later, traveled back to Canada without the

28

children.  According to Respondent, after she reviewed the order allowing Petitioner's mother

1    to pick up the children, she contacted Petitioner and informed him that she objected to the

2    order.  Thereafter, neither Petitioner nor his mother made any further attempts to pick up the

3    children either by returning to Arizona to pick up the children or by contacting Respondent

4    to discuss the matter.[1]

5         On May 29, 2006, Petitioner began the process of seeking the children's return to

6    Canada under the Hague Convention on the Civil Aspects of International Child Abduction,

7    opened for signature, October 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (the

8    "Convention").  This process led to Petitioner filing his Petition to Return Children to

9    Petitioner in this Court on September 15, 2006.  In the Petition, and at the hearing, Petitioner

10   argued that Respondent's refusal to return the children to Canada in May 2006 constitutes

11   wrongful retention under the Convention.  As a result, Petitioner requests that this Court

12   order the children returned to Canada.

13   **II.    Discussion**

14        The Convention is an international instrument that provides parents, guardians and

15   close relatives with a way to challenge another's decision to use "force to establish artificial

16   jurisdictional links on an international level with a view to obtaining custody of a child."

17   *Mozes v. Mozes*, 239 F.3d 1067, 1067 (9th Cir. 2001) (quoting the official Hague Conference

18   Reporter's explanatory report).  Both Canada and the United States are parties to the

19   Convention, and the United States implemented the Convention in the International Child

20   Abduction Remedies Act, 42 U.S.C. § 11601 *et seq*.

21        The Convention is designed to both "secure the prompt return of children wrongfully

22   removed to or retained in a Contracting State" and also to "ensure that rights of custody and

23   of access under the law of one Contracting State are effectively respected in other

24   Contracting States."  Convention, Art. 1.  The Convention accomplishes its twin objectives

25

26        [1]Petitioner admitted on the stand that he could have traveled to Arizona during his
     three days off work to pick up the children, and that this probably would have been only a
27   couple of days after the actual exchange date set forth in the May 16, 2005 consent order.
     Likewise, Respondent testified that she would have released the children to Petitioner had
28   he, instead of his mother, traveled to Arizona to pick up the children.

by removing an abductor's primary motivation to remove a child from his or her home state. "Since the goal of the abductor generally is to obtain a right of custody from the authorities of the country to which the child has been taken, the signatories to the Convention have agreed to deprive his actions of any practical or juridical consequences." *Mozes*, 239 F.3d at 1070.  To that end, when a child who was habitually residing in one contracting state is wrongfully retained in another contracting state, Article 12 of the Convention obligates the judicial or administrative authorities of the latter state to "order return of the child forthwith." *Id.*

A retention is wrongful under Article 3 of the Convention when "it is in breach of rights of custody attributed to a person . . ., either jointly or alone, under the law of the State in which the child was habitually resident immediately before the . . . retention" and "at the time of . . . retention those rights were actually being exercised, either jointly or alone, or would have been so exercised but for the . . . retention."  Under applicable Ninth Circuit jurisprudence, "habitual residence" is defined as the "locus of the child's family and social development." *Mozes*, 239 F.3d at 1084.

The International Child Abduction Remedies Act (the "Act"), 42 U.S.C. § 11603(a) and (b), vests original jurisdiction over actions arising under the Convention in any state or federal district court "which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."  The Act also requires state and federal courts to accord full faith and credit to the custody determinations of the courts of Contracting States, of which this Court is authorized to take judicial notice pursuant to Article 14 of the Convention. The Act requires Petitioner to prove by a preponderance of the evidence that the children have been wrongfully retained within the meaning of the Convention.  42 U.S.C. § 11603(e)(1)(A).  Thereafter, Respondent may oppose the return of the children by establishing by clear and convincing evidence that (1) "there is a grave risk that [the children's] return would expose the [children] to physical or psychological harm or otherwise place the [children] in an intolerable situation." or (2) would be in violation of "the fundamental principles of the [United States] relating to the protection of human rights and

1
2
3
4
5
6

fundamental freedoms." 42 U.S.C. § 11603(e)(2)(A); Convention, Arts. 13b, 20. Otherwise, Respondent must establish by a preponderance of the evidence that (1) more than one year has passed between the alleged wrongful retention and the commencement of the proceedings for return of the children and "it is demonstrated that the [children are] now settled in [their] new environment" or (2) Petitioner was not actually exercising custody rights at the time of the retention.  42 U.S.C. § 11603(e)(2)(B); Convention, Arts. 12, 13.

7
8
9
10
11
12
13
14

In this matter, Petitioner alleges that Respondent's refusal to turn the children over to his mother, as provided in the May 16, 2006 ex parte order, constitutes wrongful retention under the Convention.  As discussed, a retention is wrongful only if it violates Petitioner's custody rights and if, at the time of the retention, Petitioner was actually exercising those rights or would have been but for the retention.  While Petitioner's custody rights may arise under general Canadian law, the fact that Petitioner's custody rights were set forth in the various consent orders issued by the Provincial Court of British Columbia renders general Canadian law on the issue immaterial.

15
16
17
18
19
20
21
22
23
24
25
26
27

Thus presented, the issue the Court must decide is whether Respondent's refusal to release the children to Petitioner's mother, as provided in the May 16, 2006 ex parte order, was in violation of Petitioner's custody rights under the Canadian court's consent orders.  In this regard, Petitioner has admitted he did not formally serve Respondent with a copy of the ex parte order, even though it directly contravened and modified the parties' prior agreements and consent orders.  While Respondent eventually received actual notice of the ex parte order, Petitioner has failed to show that actual notice, instead of formal service, is sufficient under Canadian law to render the ex parte order enforceable against Respondent.  Because of Petitioner's failure, the Court cannot conclude that the ex parte order, which modified Petitioner's custody rights such that his mother was authorized to pick up the children, had any force or effect as against the Respondent.  Therefore, the Court finds that Petitioner has failed to prove by a preponderance of the evidence that Respondent's refusal to release the children to Petitioner's mother, who was not authorized to pick up the children under the

28

Canadian consent orders, was in violation of Petitioner's custody rights.[2]

In the alternative, the Court finds that the various consent orders issued by the Canadian court have resulted in the creation of "dual habitual residences" for the children in Canada and the United States.  As the Ninth Circuit, albeit in *dicta*, has recognized, dual habitual residences may be acquired by children who spend regular, alternating periods with each parent in different Contracting States.  *Mozes*, 239 F.3d at 1084 n. 50 (citing Beaumont & McEleavy, The Hague Convention on International Child Abduction 1, p. 1070 at 110 (1999) (arguing that such a conclusion may in certain cases be theoretically appropriate, and would not call for return under the Convention)).  In this matter, the various Canadian consent orders provided for regular, alternating periods of custody for Petitioner in Canada and Respondent in Arizona.  Because of this regime, and according to Respondent's testimony, the children are well-acclimated to Arizona.  The children have numerous friends both in their neighborhood and through their church, which they attend weekly.  Also, the children visit Respondent's family at least twice a month and the oldest child has started pre-kindergarten at a local Catholic school.  Considering the children's young ages and their ongoing social development, in addition to Canada, Arizona has become the "locus of the child's family and social development."  *Mozes*, 239 F.3d at 1084.  Accordingly, the Court finds that Arizona also is the children's habitual residence and, as a result, their return to Canada is not authorized under the Convention.

\\\

\\\

\\\

\\\

---

[2]Further evidence of a lack of a violation of Petitioner's custody rights is Petitioner's failure, after Respondent refused to release the children to Petitioner's mother, to pick up the children personally or seek some other agreeable alternative.  Thus, the Court finds that, in May 2006 and thereafter, Petitioner was not actually exercising or attempting to exercise his custody rights as set forth in the Canadian consent orders and, accordingly, the retention is not wrongful under the Convention.

1

Accordingly, for the foregoing reasons

2

IT IS ORDERED that Petitioner's Petition to Return Children to Petitioner (Doc. # 1)

3

is DENIED.

4

DATED this 2nd day of February, 2007.

5

6

7

James A. Teilborg
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28